UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 7:18-CR-128 |
| | § | |
| SELENE M SUAREZ | § | |

## OPINION AND ORDER

The Government has filed a Motion for A Determination of Conflict[1] and an Addendum[2] thereto. The Government seeks a determination of whether Jamie Pena, one of two attorneys representing Defendant Selene M. Suarez ("Saurez") has a conflict of interest that would prohibit him from representing Saurez. Saurez has responded. On March 18, 2019, the Court conducted an evidentiary hearing at which the Government presented four witnesses. Saurez, although provided the opportunity to call witnesses, did not do so.

**I    Background**

Saurez is charged in a six-count superseding indictment with structuring financial transactions to evade reporting requirements in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d).[3] During the relevant time period, Saurez was employed by Solloa & Associates, LLC and U.S. PetroMex Oil & Gas, LLC ("PetroMex"). Both of these entities are owned, at least in part, by Fernando Solloa ("Solloa").[4] According to the Government, the transactions at issue involved cash that Saurez was converting to cashier's checks made payable to PetroMex and/or Solloa.[5] Saurez, who is currently out on bond, remains employed by PetroMex. Saurez was

---

[1] Dkt. No. 56.
[2] Dkt. No. 62.
[3] Dkt. No. 64.
[4] Dkt. No. 9.
[5] Dkt. No. 62.

originally indicted in January 2018 at which time she retained Christopher Sully to represent her. On February 15, 2019, attorney Jaime Pena ("Attorney Pena") filed a Notice of Appearance in this case.

Generally, the transactions at issue in this case were discovered during the investigation into drug trafficking activities of Ismael Lechuga ("Lechuga").[6] That investigation revealed that Lechuga had invested his drug trafficking proceeds into various commercial properties in the McAllen and Mission areas. The investigation also revealed that various entities were involved in these real estate transactions. One of those entities was Solloa & Associates, LLC., Saurez's then employer. A search warrant executed at that business led to the charges in this case. The evidence gathered in connection with the Lechuga investigation also revealed that Attorney Pena had represented various of the individuals/entities associated with Lechuga's real estate investments, including Solloa & Associates.

It is the Government's position that an actual or potential conflict exists in this case between Pena's representation of Saurez and his prior and ongoing representation of the various individuals/entities associated with Lechuga's real estate investments. For reasons further explained below, the Government also raises a concern regarding the source of funds used to pay Attorney Pena.

**II Discussion**

    a. *Legal Standard*

The Sixth Amendment to the Constitution of the United States guarantees the assistance of counsel in all criminal prosecutions. "[T]he purpose of providing assistance of counsel 'is

---

[6] See Case No. 7:16-cr-876; Lechuga was indicted in June 2016 and he has since been convicted and is awaiting sentencing.

simply to ensure that criminal defendants receive a fair trial . . . '"[7] "Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[8] One well recognized limitation on the right to be represented by counsel of one's choice is the right to representation that is free from any conflict of interest.[9] Thus, when alerted to a possible conflict of interest, the court must take steps to determine whether a conflict exists.[10] Fundamentally, the Court has an "independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment" regardless of the defendant's counsel of choice.[11] The Court is also duty-bound to "ensur[e] that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."[12] Furthermore, a "District Court must recognize a presumption in favor of [defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict."[13]

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties."[14] This question is highly fact-sensitive.[15] As such, it is often difficult to find a "white horse case."[16] Thus, on a case by case basis, the Court must consider a

---

[7] *Wheat v. United States*, 486 U.S. 153, 158-62 (1988)(Citing *Strickland v. Washington,* 466 U.S. 668, 689 (1984)).
[8] *Id*. (Internal citations omitted).
[9] *Wood v. Georgia,* 450 U.S. 261, 271 (1981).
[10] *Holloway v. Arkansas*, 435 U.S. 475, 483 (1978); *Wheat*, 486 U.S. at 160.
[11] *Wheat,* 486 U.S. at 161.
[12] *Sanchez Guerrero,* 546 F.3d at 333 (quoting *Wheat,* 486 U.S. at 160) (internal quotation marks omitted).
[13] *Wheat,* 486 U.S. at 164.
[14] *United States v. Medina,* 161 F.3d 867, 870 n. 1 (1998) (quoting *United States v. Carpenter,* 769 F.2d 258, 263 (5th Cir.1985)) (alteration in original) (internal quotation marks omitted); *accord Mitchell v. Maggio,* 679 F.2d 77, 79 (5th Cir.1982).
[15] *Perillo v. Johnson*, 205 F.3d 775, 782, 798–99 (5th Cir. 2000).
[16] *Hilland v. Arnold*, 856 S.W.2d 240, 242 n. 1 (Tex.App.-Texarkana 1993, no writ).("[A]round the turn of the century a Texas law firm had a case in which a white horse owned by the client's taxi service reared in the street, causing an elderly woman to fall and injure herself. The partner handling the case asked a young associate to find a

number of factors, including, but not limited to, whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated.[17]

If a trial court determines that a conflict exists, a defendant may nonetheless waive the right to conflict-free counsel.[18] However, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented."[19] As so ably stated by the Supreme Court in *Wheat*

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.
>
> For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases

---

case on point. The associate came back several hours later with a case involving an elderly lady who had fallen in the street after a taxi company's black horse had reared in front of her. When the associate took this case to the partner, the partner said, 'Nice try, son. Now go find me a white horse case.'")

[17] *Perillo*, 205 F.3d at 798–99.
[18] *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), abrogated on other grounds by *Flanagan v. United States*, 465 U.S. 259, 263 & n. 2 (1984).
[19] *Wheat v. United States*, 486 U.S. at 162.

where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.[20]

Ultimately, the Court must ensure that the essential aim of the Sixth Amendment - the guarantee of an effective advocate for each criminal defendant, is protected.[21]

    b.    *Relevant Facts*

The evidence presented in this case reveals that upon Lechuga's arrest, the Government sought forfeiture of the assets derived from his drug trafficking operations. As a result thereof, his wife, Fabiola Jimenez, ("Fabiola") retained the services of Attorney Pena to assist her in securing her interests and the interests of Reymac Investments, LLC ("Reymac") in the subject assets.[22] Reymac is owned 50% by Fabiola and 50% by Lechuga.[23] That representation began in July 2016 and ended around February 2017.[24]

Also, during the relevant time period Pena represented Lechuga in relation to the attempted purchase/development of a commercial property referenced as the McCenter development.[25] It is unclear if this representation was of Lechuga individually, or of one of his corporate entities. Pena has also represented Solloa & Associates and its related entities, 83 Citrus Grove LLC, and 1131 Properties, LLC.[26] Also, for a brief period in 2016, Pena represented Reymac as its general counsel and then again represented Reymac as noted in the preceding paragraph.[27] Pena also represented PetroMex in late 2014 to early 2015 and has

---

[20] *Id.* at 162-63.
[21] *Id.* at 159.
[22] Dkt. No. 61-1, Affidavit of Jaime Pena. The Affidavit was never offered as evidence, but the Court nonetheless considers it only to the extent any statement therein in not otherwise disputed.
[23] Fabiola Jimenez testimony at March 18, 2019 hearing.
[24] Dkt. No. 61-1, Affidavit of Jaime Pena.
[25] Fabiola Jimenez testimony at March 18, 2019 hearing regarding McCenter proposed development. While Pena claims otherwise in his affidavit, the Court credits the live testimony over the affidavit.
[26] Dkt. No. 61-1, Affidavit of Jaime Pena.
[27] *Id.*

continuously represented that entity since November 2015.[28] Additionally, Pena also represented Fernando Solloa in connection with a Government investigation into his businesses.[29]

By Pena's own admission, he also represented Arom Salazar, a one-time employee of Lechuga and/or his business entities, "in an effort to protect [Fabiola] and the properties [] and on the representations that [Fabiola] would cover the expenses of his defense since it was in [her] best interests that he not be leveraged into becoming a witness for the government against [her] and [her] husband."[30]

At the hearing held on March 18, 2019, the Government presented testimony form Fabiola; Maria Christina Jimenez ("Maria"), Fabiola's sister; Erika Guerra ("Guerra"), an employee of PetroMex; and U.S. Deputy Marshal Jesus Balleza. Generally, Fabiola testified that she hired Pena to represent her and Reymac in the attempt to protect their property interests from forfeiture. Fabiola also testified that sometime during that representation Attorney Pena commented that he used to do work for Solloa but that he had ceased because his business dealings were shady. According to Fabiola, Attorney Pena also commented that Solloa's employees' deposited money into accounts for Solloa and that Saurez would end up in trouble because she did everything for Solloa. Maria testified that she too was present when Attorney Pena made those statements and although her testimony was slightly different, she corroborated the statements attributed to Attorney Pena. Guerra generally testified that Fernando Solloa was one of the owners of PetroMex and that Saurez was its manager. Guerra also testified that Saurez kept PetroMex's accounts. Deputy Marshal Balleza simply testified regarding the gathering of documents from Solloa & Associates pursuant to a search warrant.

---

[28] Dkt. No. 67-1, Addendum to Affidavit of Jaime Pena.
[29] Dkt. Nos. 62-4, 67-1 & 67-2.
[30] Dkt. No. 56-2, Letter from Jaime Pena to Fabiola Jimenez. See also Case No. 7:16-cr-1607.

*c. Analysis*

The foregoing facts, considered in light of the applicable legal principles set out above, convince the Court that an actual conflict of interest exists, or at the very least, that a serious potential for conflict exists here should Pena continue to represent Saurez in this case. It is undisputed that Pena has served as counsel for Solloa & Associates during at least some of the time of the transactions at issue in this case. Additionally, Pena represented Fernando Solloa for some time in 2017 regarding Solloa's business dealings which were being investigated by the Government. Pena also represented PetroMex for a brief period in late 2014 and early 2015 and then has represented PetroMex continuously since November 2015.

As previously noted, Saurez is charged in six separate counts of structuring financial transactions to evade reporting requirements. Generally, the Government alleges that Saurez did so by depositing cash in amounts less than ten thousand dollars and then converting those deposits into cashier's checks. Those transactions are alleged to have occurred in 2013, 2014 and 2015. Additionally, Saurez was working for Solloa & Associates as well as for PetroMex during this time period and it is the Government's position that the cashier check's which Saurez obtained were made payable to Solloa and/or PetroMex. According to Fabiola and Maria, Pena had some knowledge of Solloa's questionable practices and even expressed concern for its employees.

The nature of this prosecution is such that it will necessarily require some testimony pertaining to the businesses for which Saurez worked at the time of the alleged transactions. As noted, Saurez continues to work for PetroMex and Attorney Pena continues to represent PetroMex. While there is no evidence before the Court that Pena has any specific knowledge regarding the specific transactions at issue, he previously voiced concerns for Solloa's business

practices and in particular because employees deposited money for Solloa. It is unclear from the evidence whether the concern was related to Solloa & Associates or for Solloa individually. However, Solloa is one of the owners of PetroMex. Despite Pena's claims to the contrary, it certainly appears from Pena's comment and his continued representation of PetroMex that he would have gained confidential information regarding PetroMex's business dealings. That information might be helpful to Saurez, but might be harmful to PetroMex, or vice versa. Furthermore, his representation of Saurez could be compromised by his continued representation of PetroMex, the entity for which Suarez allegedly obtained cashier checks and for which she continues to work.

This triangular relationship also raises a concern regarding the source of funds used to pay Attorney Pena. Although no evidence was presented on this issue, the Court did address the matter with Saurez at a hearing held on March 7, 2019. According to Saurez, she has "not yet" paid Pena but according to Pena, he has volunteered his services. Because the Court has found that an actual conflict exists, it is unnecessary to inquire further but these contrary positions provide cause for concern.

Finally, the Court finds that the nature of the instant charges and Saurez's continued employment by PetroMex, combined with Pena's continued representation of PetroMex are such that a waiver of the conflict is inadequate to guarantee that Saurez will have an effective advocate should she be represented by Attorney Pena. Thus, the Court rejects any waiver Saurez may proffer. The Court does note that Saurez has been effectively represented by Attorney Christopher Sully from inception of this case, and she continues to be so represented.

III    Conclusion

For the foregoing reasons, the Court finds an actual conflict of interest exists, or at the very least, that a serious potential for conflict exists here should Pena continue to represent Saurez in this case. Accordingly, Attorney Jaime Pena is withdrawn from representing Selene Saurez in this case.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 28th day of March, 2019.

                                                                           _____
                                                                           Micaela Alvarez
                                                                           United States District Judge